ALVORD NATIONAL BANK ET AL. v. LUTHER F. FERGUSON.

Decided February 5, 1910.

**1.—Homestead—Abandonment—Sale.**

The facts that the husband contracted for, made a partial payment upon, and received a deed to a tract of land, and that he and his wife thereafter moved from the old homestead to the land so acquired with the intention of making the same their homestead, constituted an abandonment of the old homestead, and a sale of the same thereafter at the instance of the husband by a trustee to whom it had been conveyed as security for debt while occupied as their homestead, would pass title to the same as effectually as if conveyed by the husband and wife themselves, and the fact that the new homestead was lost because of inability to pay for the same, would not affect the question.

**2.—Same—Sale by Husband.**

In the absence of such fraud upon the wife as would entitle her to a rescission, a sale of the homestead by the husband alone would become effective to convey title when thereafter abandoned as a homestead.

**3.—Same—Disposition of Proceeds by Husband—Consent of Wife.**

The husband has the right to control the proceeds of the sale of a former homestead, and in the absence of such a fraud practiced upon the wife as

Vol. LIX Civil—8.

would entitle her to a rescission of the conveyance of the former home, the husband has the right to apply the proceeds of the sale of the same to the payment of community debts, even against the wishes of the wife.

Appeal from the District Court of Wise County. Tried below before Hon. J. W. Patterson.

*McMurray & Gettys,* for appellants.—The court erred in the judgment rendered in favor of intervener, for that she and her husband had acquired a new homestead from Pierce, and were residing thereon at the time said $800 was procured from the sale of the old homestead; and the old homestead, being thus left and abandoned as such, could be disposed of by the husband, and it was not essential that the wife execute a deed to same, nor that her interest and right should have passed by the deed to Carter. Kirby v. Blake, 52 Texas Civ. App., 173; Marler v. Handy, 88 Texas, 427; Whiteselle v. Jones, 39 S. W., 405.

Where husband and wife convey the homestead—whether the title passes by deed, estoppel or otherwise—and the purchase price of same is paid into the hands of the husband, he may dispose of the money as he chooses without the knowledge or consent of the wife, and she can not follow it into the hands of others and recover it. Coker v. Roberts, 71 Texas, 598; Love v. Breedlove, 13 S. W., 222; Brown v. Willson, 29 S. W., 530; Whiteselle v. Jones, 39 S. W., 405.

The court erred in rendering judgment for intervener, for that said $800 sued for was, at all events, purchase money arising from a sufficient and legal transfer of an interest in the land from plaintiff and intervener to said McGeorge, and the $800 was personal property, and defendants received the same in good faith and applied it on the community debts of plaintiff and intervener with the consent of plaintiff. Hickman v. Hoffman, 11 Texas Civ. App., 605; Laffare v. Knight, 101 S. W., 1034; Allen v. Anderson, 96 S. W., 54; Garner v. Boyle, 34 Texas Civ. App., 42; Whiteselle v. Jones, 39 S. W., 405; Webb v. Burney, 70 Texas, 322; Harrington v. McFarland, 1 Texas Civ. App., 289.

*R. E. Carswell,* for appellee.

DUNKLIN, Associate Justice.—Luther F. Ferguson , sued the Alvord National Bank and John T. Carter to recover eleven hundred dollars claimed to be due him by the defendants. His wife, Zedie Ferguson, intervened, and sought a recovery in her own right upon substantially the same allegations contained in plaintiff's petition and some additional allegations hereinafter noted. Judgment was rendered denying plaintiff a recovery, but in favor of the intervener against the defendants for eight hundred and fifty-six dollars, and from the judgment in favor of the intervener the defendants have appealed.

Plaintiffs alleged substantially that on the 8th of November, 1905, they executed an instrument in writing purporting to convey their homestead of one hundred acres out of the Sweeney survey to defendant John T. Carter, with the understanding between the parties

thereto that the same should be effective as a mortgage only to secure the payment of certain indebtedness which plaintiff then owed the Alvord National Bank; that plaintiff and intervener were occupying and claiming the property as their homestead at the time, and continued so to do until September, 1907, when plaintiff decided to sell the same to J. P. Cotton for eight hundred dollars cash and twelve hundred dollars in deferred payments, for the purpose of using the proceeds to acquire another home which he had contracted to purchase from J. W. Pierce; that plaintiff with his family then moved to the Pierce tract, and placed Cotton in possession of the Sweeney tract and procured the execution of a deed of conveyance of the latter track from John T. Carter to Cotton; that as Cotton was unable to raise the cash consideration of eight hundred dollars it was arranged that he should execute a promissory note therefor, and secure its payment by a deed of trust on the property, the note to be then sold and the proceeds of the sale paid to plaintiff; that it was further arranged that the deed to Cotton should recite the balance of twelve hundred dollars as paid so as to create a superior lien on the property in favor of the holder of the eight-hundred-dollar note; that all the papers contemplated by this understanding were executed, and the eight-hundred-dollar note was sold to William McGeorge, an innocent purchaser, the proceeds of which were by defendants applied to the payment of plaintiff's indebtedness to the bank without his consent; that without the proceeds of sale of said note plaintiff and intervener were unable to comply with their contract of purchase of the Pierce tract, and were therefore forced to abandon it; that thereafter they procured a deed from Cotton conveying to them the Sweeney tract and in which deed they assumed the payment of the eight-hundred-dollar note held by McGeorge, which, under the circumstances related, was a valid lien upon the property.

Intervener adopted the foregoing allegations in plaintiff's pleadings, and further alleged that she consented to the conveyance of the Sweeney tract to Cotton with the understanding that the proceeds of such sale would be applied to the purchase of the Pierce tract, and but for that understanding she would not have surrendered the same to Cotton, and that the money realized from the sale of the eight-hundred-dollar note was applied to the payment of her husband's debt to defendant bank without her consent. Upon the facts alleged in their pleadings both plaintiff and intervener prayed for judgment against the defendants for the amount accrued on said note sold to McGeorge.

The trial was by the court without the intervention of a jury, and the following are the findings of fact and conclusions of law filed by the trial judge and made the basis of the judgment rendered:

*"Conclusions of fact as found by the court.*—1st. I find that on the 8th day of November, 1905, the plaintiff, Luther Ferguson, joined by his wife, Zedie Ferguson, conveyed to John T. Carter the 100 acres of land out of the Wm. Sweeney survey described in plaintiff's petition; that said conveyance was in the form of a deed, but was in truth and in fact a mortgage to secure money due by the plaintiff to the de-

fendant bank; that this fact was understood both by the plaintiff and the said John T. Carter, who was an officer in and manager of said defendant bank; that said 100 acres was at that time and for a long time had been the homestead of the said plaintiff and his wife Zedie, and this fact was known to said Carter when he took said deed of conveyance; that Ferguson and his wife continued to live on said place after said conveyance for some time, when they moved off the same and on to a place they contemplated purchasing for a home; that before moving off of said place the plaintiff had negotiated a sale of the same to one Cotton, and, at the instance of plaintiff, the said John T. Carter, one of the defendants, made a deed to the said Cotton for a recited consideration of $2,000—$1,200 cash, and one promissory note for $800; that nothing was in fact paid, except the execution of the note by said J. P. Cotton, payable to order of John T. Carter; that thereafter the said J. T. Carter conveyed said note and all interest he had in the land to Wm. McGeorge, Jr., of Philadelphia, Pa., for and in consideration of the sum of $800, and thereafter the said J. P. Cotton gave a deed of trust on said 100 acres of land to secure said $800 note held by the said McGeorge; that said McGeorge was an innocent purchaser of said note, believing at the time that the instrument from Ferguson and wife to John T. Carter was in fact a deed, and said $800 was a valid lien on said 100 acres of land, the homestead of plaintiff and his wife. That at the time the said Zedie Ferguson signed said conveyance to Carter she did not understand exactly what she was signing, but simply signed the same at the request of her husband; that Mrs. Ferguson, when the land was conveyed to Cotton, did not understand that Carter was to make a deed, but it was her purpose and understanding that the purchase money arising from said sale to Cotton should be used by herself and husband to pay for the other tract of land that they had contracted for and contemplated making their home; that Cotton had no way to make a cash payment of $800 recited in said deed, except to borrow it on the land, which he did; that when the money was paid by McGeorge to the said John T. Carter, he, with the consent of plaintiff, paid or caused it to be paid to the defendant bank on debts then owed by the plaintiff to said bank; that Mrs. Zedie Ferguson, the intervener herein, did not consent to pay any of said money to the bank, and did not know the same was to be so paid, but expected and intended that the same should be used to procure the other homestead they had contracted for; that she would not have consented for the land to have been sold to the said J. P. Cotton, and would not have moved from the place had she not thought that the proceeds arising from the sale of said place would be used to pay on the homestead they contemplated purchasing.

"That after the said J. P. Cotton had executed said deed of trust on said place to secure said $800 to the said McGeorge, and said Cotton, being unable to comply with his contract and purchase, reconveyed the land to plaintiff Ferguson for a recited consideration of $2,000, $1,200 of which was recited as cash, and the assumption of said $800 note made to Carter and by him transferred to said McGeorge; that in truth and in fact nothing was paid by said Ferguson,

except $50 which he gave to Cotton to rue back, taking the place from Cotton subject to the $800 note and interest that had been made by Cotton to Carter, and by Carter transferred to McGeorge.

"The instrument made to Carter, conveying the homestead of plaintiff and his wife, being in fact a mortgage, was invalid, and was so known to the said Carter, who acted for the bank in paying or causing to be paid the proceeds of said $800 note to the bank, one of the defendants herein.

"And by the action of Carter and Cotton a valid lien has been established against said homestead of the plaintiff and his wife without the knowledge and consent of Zedie Ferguson, the intervener herein, wife of plaintiff, and by said transaction her homestead is incumbered for said sum without the knowledge or consent and against her wishes. She should recover of the said defendants said $800 and interest at six percent since the same was paid to said bank."

The facts found by the court, read in connection with the pleadings of plaintiff and his wife, establish an abandonment of the Sweeney tract before its sale to Cotton. In addition to the facts so found by the court, it was shown by the uncontroverted testimony of plaintiff that he procured a deed from J. W. Pierce to the land upon which he moved with his family, and upon which he and his wife both intended to make their home after moving from the Sweeney tract; that he made a partial payment of three hundred dollars for that property and obligated himself to pay the balance of the consideration at future dates. The deed from Carter to Cotton having been made at plaintiff's instance was as effectual to convey title to the Sweeney tract as if it had been executed by the plaintiff in person. There was no finding by the court that in causing the lien to be fixed on the Sweeney tract to secure payment of the eight-hundred-dollar note sold to McGeorge, plaintiff and defendants practiced a fraud upon plaintiff's wife, and no claim was made by plaintiff nor by intervener that the Sweeney tract was the separate property of Mrs. Ferguson at the time Carter executed the deed thereto in favor of Cotton. If that property was not the separate property of the wife, then it was the separate property of the husband, or else the community property of himself and wife, and whether it was the one or the other, he had the legal right to sell it without his wife's consent after plaintiff and his wife had abandoned it as a home. Even though the deed from Carter to Cotton had been executed before such abandonment of the property as a home, in the absence of such fraud upon the wife as would entitle her to a rescission of the sale, it would have become effective to convey title as soon as the abandonment occurred. Kirby v. Blake, 53 Texas Civ. App., 173 (115 S. W., 675); Marler v. Handy, 88 Texas, 427. Neither plaintiff nor his wife sought a cancellation of the conveyance by Carter to Cotton. In the pleadings of both it is alleged that the eight-hundred-dollar note sold to McGeorge was a valid lien upon the Sweeney tract; that they had procured a deed from Cotton reconveying that property to them, and that as a part of the consideration for that conveyance they had assumed the payment of said note, thus conceding the validity of the conveyance by Carter to Cotton. The trial court found that plaintiff had applied the proceeds realized

from the sale of this note to the payment of his indebtedness to defendant bank. It is settled law in this State that proceeds collected on a fire insurance policy issued on a building which is part of a homestead, as well as the proceeds of the sale of a homestead, are exempt from the payment of the husband's debts other than for such debts as are owing for purchase money of the homestead or for taxes thereon. Cameron v. Fay, 55 Texas, 58; Chase v. Swayne, 88 Texas, 218. Neither by the Constitution nor by the statutes is the husband precluded from applying funds so realized to the payment of community debts without the consent of the wife. Her execution and acknowledgment of the deed to the homestead is required by law, but there is no law requiring her consent to the disposition of the proceeds of the homestead by the husband, at least so long as he acts in good faith towards her. The husband has the right to select the homestead for the family, and has the right to control the proceeds of its sale. In the absence of such a fraud practiced upon the wife under such circumstances as would entitle her to a rescission of the conveyance to Cotton, under the rule recognized in Pierce v. Fort, 60 Texas, 464, and Scoggins v. Mason, 46 Texas Civ. App., 480 (103 S. W., 831); Pool v. Chase, 46 Texas, 207; McDannell v. Horrell, 1 Posey Unreported Cases (Texas), 521, the husband's subsequent decision to apply the money realized therefrom to the payment of his debts, without the wife's consent and against her wishes, could not be deemed a fraud upon her authorizing a recovery by her of the money so paid. Whiteselle v. Jones, 79 S. W., 405.

From the foregoing conclusions it follows that the judgment of the trial court in favor of intervener should be reversed; that judgment should be here rendered in defendant's favor as against intervener's suit; that the judgment in defendant's favor as against plaintiff's suit, from which there was no appeal, should not be disturbed, and it is so ordered.

*Affirmed in part and reversed and rendered in part*

Writ of error refused.